**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **AMWEST SURETY INSURANCE COMPANY, in Liquidation,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | **Civil Action No. 7:12-cv-00146-O** |
| **JOSE L. CARDENAS and GLORIA CARDENAS,** | § | |
| **Defendants.** | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are: Plaintiff Amwest Surety Insurance Company in Liquidation's Motion for Summary Judgment, filed June 28, 2013 [ECF No. 31]; Defendants Jose Cardenas and Gloria Cardenas' Motion for Summary Judgment, filed July 1, 2013 [ECF No. 37]; and Defendants Jose Cardenas and Gloria Cardenas' Motion to Strike Portions of Affidavit of Michael Fitzgibbons, filed July 24, 2013 [ECF No. 46]. Having considered the motions, responses, replies, record, evidence and applicable law, and for the reasons stated herein, the Court: **denies** Plaintiff Amwest Surety Insurance Company in Liquidation's Motion for Summary Judgment [ECF No. 31]; **grants** Defendants Jose Cardenas and Gloria Cardenas' Motion for Summary Judgment [ECF No. 37]; and **denies** Defendants Jose Cardenas and Gloria Cardenas' Motion to Strike Portions of Affidavit of Michael Fitzgibbons [ECF No. 46].

## I. Facts and Procedural Background

The relevant procedural background and material facts necessary for the Court to rule on the pending motions are undisputed.

Plaintiff Amwest Surety Insurance Company (in Liquidation) ("Amwest") is an insurance company organized and existing under the laws of Nebraska, and is subject to an Order of Liquidation, Declaration of Insolvency and Injunction ("Liquidation Order") entered by the District Court of Lancaster County, Nebraska ("Liquidation Court") on June 7, 2001. Amwest Summ. Judg. App. at 30 (Affidavit of Michael Fitzgibbons ¶ 6) ("Fitzgibbons Aff."); *id.* at 34-40 (June 7, 2001 Liquidation Order).[1] Bruce M. Range, the current Nebraska Insurance Director, now serves as Liquidator of Amwest, and has the power and responsibility to take possession of the assets of the insolvent insurer and administer them under the general supervision of the Liquidation Court. *Id.* at 30 (Fitzgibbons Aff. ¶ 6).[2]

On June 19, 1998, Oil Services and Construction Company ("OSCC" or "Contractor") agreed to construct improvements in a portion of the Texas and Pacific Railway Building in Fort Worth, Texas for the Fort Worth Transportation Authority ("FWTA"). Cardenas Summ. Judg. App. Tab 3 (Affidavit of Jose Cardenas ¶ 2) ("Cardenas Aff."); Ex. A to Cardenas Aff. (Contract IFB #98-

---

[1]Defendants Jose Cardenas and Gloria Cardenas' Motion to Strike Portions of Affidavit of Michael Fitzgibbons [ECF No. 46] is denied. Defendants object to portions of Fitzgibbons' Affidavit stating he is "not a competent witness to serve as custodian of the records under Rule 803(6)." Def. Mot. to Strike at 1 [ECF No. 46]. In opposition, Amwest argues that: "All documents submitted in conjunction with the Fitzgibbons Affidavit are contained in the Amwest 'claim file.' The claim file was compiled in connection with Amwest's Liquidation proceedings and used under Fitzgibbon's supervision and control and in his position as Amwest's Special Deputy Liquidator." Pl. Reply in Supp. of Summ. Judg. Mot. at 7 [ECF No. 51]. Having reviewed the claim file, affidavit, parties' arguments, and Fed. R. Evid. 803(6), the Court finds Fitzgibbons competent to serve as records custodian, and will consider those documents cited herein from the claim file as admissible.

[2]The Liquidation Order provides that "all . . . persons and legal entities are hereby enjoined from . . . any . . . threatened or contemplated action that might lessen the value of Amwest Surety's assets[]" and that "[t]he Liquidator is authorized to forthwith take possession and control of the assets of Amwest Surety and administer them under the general supervision of this Court" and "all other persons and legal entities are hereby enjoined from . . . interfering with the Liquidator . . . or with proceedings involving Amwest Surety under the Liquidation Act." Amwest Summ. Judg. App. at 34-40 (June 7, 2001 Liquidation Order).

T019) ("Construction Contract").[3] As required by the Construction Contract and by statute, *see* Tex. Gov't Code § 2253.021(a),(d), Contractor secured bonding to guarantee its obligations under the Construction Contract. Specifically, Amwest (as surety) issued performance and payment bonds naming FWTA as obligee; in return, pursuant to a General Indemnity Agreement executed June 19, 1998 ("Indemnity Agreement"), Contractor agreed "to indemnify and hold the Surety harmless from and against any and all demands, liabilities, losses, costs, damages, attorneys' fees and expenses of whatever kind or nature which arise by reason of, or in consequence of, the execution by the Surety" of any Bond on behalf of the Principal (OSCC) "and whether or not the Surety shall have paid any sums in partial or complete payment thereof [. . .]." Amwest Summ. Judg. App. at 30 (Fitzgibbons Aff. ¶¶ 11-12); *id.* at 41 (Indemnity Agreement ¶ 2); *id.* at 47 (Texas Statutory Performance Bond – Public Works – No. 1363139); *id.* at 48 (Texas Statutory Payment Bond – Public Works – No. 1363139) (sometimes collectively, the "Bond"); Cardenas' Summ. Judg. App. at Ex. 3 (Pl. Resp. to Def. Req. for Admiss. at 3, *Response Number 8*). The Indemnity Agreement was signed by Jose Cardenas, individually and as sole proprietor of OSCC, along with his spouse, Gloria Cardenas, individually. Amwest Summ. Judg. App. at 43-44.

After issuance of the Bond in June 1998, and prior to the June 7, 2001 Liquidation Order, on December 15, 1998, FWTA gave written notice to OSCC and Jose Cardenas that the Construction Contract was terminated for default. Cardenas Summ. Judg. App. at Ex. 3 (Pl. Resp. to Def. Req. for Admiss. at 4, *Response Number 11*). On December 29, 1999, FWTA filed a lawsuit against Jose Cardenas d/b/a OSCC and Amwest in state court in Fort Worth, Texas, seeking damages for OSCC's

---

[3]Because Defendants failed to sequentially number the pages of their appendix in violation of the Court's briefing rules, the Court must cite to each exhibit separately.

alleged breaches of the Construction Contract and seeking to enforce Amwest's obligations under the Bond. *Fort Worth Transportation Authority v. Jose Cardenas, Individually and d/b/a Oil Services Construction Company, and Amwest Surety Insurance Company*, 17th Judicial District, Tarrant County, Texas, Cause No. 17-181412-99 ("state court case"). Following entry of the Liquidation Order, on September 28, 2001, the parties to the state court case filed an agreed motion to abate further proceedings, and set a scheduling conference for February 7, 2002. Amwest Summ. Judg. App. at 31 (Fitzgibbons Aff. ¶¶ 13, 14); *id.* at 183-86 (Agreed Motion to Abate); *id.* at 194 (Order of Abatement). However, on July 9, 2004, the state court case was dismissed for want of prosecution. *Id.* at 228 (Order of Dismissal for Want of Prosecution).

On June 5, 2002, FWTA filed a claim against the Bond in Amwest's liquidation proceedings. *Id.* at 31 (Fitzgibbons Aff. ¶ 15); *id.* at 50-51 (FWTA Proof of Claim and Amended Proof of Claim). Jose Cardenas was advised of FWTA's proof of claim. *Id.* at 31 (Fitzgibbons Aff. ¶ 16). On April 5, 2007, Amwest's Liquidator recommended approval of FWTA's claim in the amount of $329,824.07, and on April 9, 2007, the Liquidation Court issued an order approving the Liquidator's recommendation of FWTA's Proof of Claim. *Id.* at 31-32 (Fitzgibbons Aff. ¶ 17); *id.* at 56-64 (Liquidator's Application and Liquidation Court's April 9, 2007 Order Approving FWTA Claim). The Liquidation Court's Order was not appealed and constitutes a final order of the Liquidation Court. *Id.* at 32 (Fitzgibbons Aff. ¶ 17). To date, Amwest has paid the aggregate amount of $164,912.04 in respect to the FWTA claim, with its first payment to FWTA on November 1, 2008. *Id.* at 32 (Fitzgibbons Aff. ¶ 18). Despite demands, Defendants have failed to indemnify Amwest for any liabilities incurred or amounts paid. *Id.* at 32 (Fitzgibbons Aff. ¶¶ 20, 21).

Amwest filed this lawsuit on August 31, 2012, seeking recovery of $329,824.07 from Defendants, as principals under the Bond, plus attorney's fees and costs, which Amwest alleges are due based on the fact that Amwest has incurred liability and has made payments on the Bond. Compl. ¶¶ 7-15 [ECF No. 1]. Amwest alleges breach of contract by Defendants as its first claim for relief and, alternatively, common law reimbursement as its second claim for relief. *Id.* ¶¶ 16-24. On July 16, 2013, Defendants filed an Amended Answer, denying any liability and asserting various affirmative defenses, including that Amwest's claims were time-barred, and that Amwest failed to meet its burden of establishing it acted in good faith under the Indemnity Agreement. Cardenas Amended Ans. [ECF No. 41]. The parties have filed cross-motions for summary judgment which are ripe for adjudication.

## II. Legal Standard

Summary judgment is proper when the pleadings and evidence on file show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c).

When reviewing the evidence on a motion for summary judgment, the court must decide all reasonable doubts and inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The court cannot make a credibility

determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion for summary judgment must be denied. *Id.* at 250.

## III. Analysis

### A. Amwest's First Claim for Relief (Breach of the Indemnification Agreement)

#### *1. Accrual Date for Statute of Limitations on Amwest's Indemnification Claim*

The Court turns first to Amwest's motion for summary judgment as to its first claim for relief for Defendants' alleged breach of the Indemnity Agreement. Amwest contends that its lawsuit for breach of the Indemnity Agreement is timely as Texas' four-year statute of limitations applicable to its claim accrued on November 1, 2008, when it paid out $82,456.02 in respect to the FWTA claim. Since this lawsuit was filed on August 31, 2012, prior to the expiration of four years, its claim is not time-barred. Amwest Brief in Supp. of Summ. Judg. Mot. at 7 [ECF No. 32]; Amwest Resp. to Def. Summ. Judg. Mot. at 8 [ECF No. 43]. Defendants argue that the statute of limitations began to run on December 15, 1998, when FWTA terminated the Construction Contract for default, such that this lawsuit is barred because it was filed well beyond the four-year limitations period. Def. Summ. Judg. Mot. at 8. [ECF No. 37]. The Court concludes both parties are in error as to the accrual date under the undisputed facts presented in this case for the following reasons.

Under Texas law, claims for indemnity are governed by the four-year statute of limitations for actions on a debt. Tex. Civ. Prac. & Rem. Code § 16.0004(a)(3); *Marathon E.G. Holding, Ltd. v. CMS Enterprises Co.*, 597 F.3d 311, 320 (5th Cir. 2010); *Smith Int'l, Inc. v. Egle Group, LLC*, 490 F.3d 380, 386 (5th Cir. 2007). The accrual date is dispositive because it determines when the statute

of limitations began to run on Amwest's cause of action and, consequently, whether the statute of limitations expired. If Amwest's cause of action accrued before August 31, 2008, four years before Amwest filed this lawsuit, then Amwest's cause of action is time-barred. If Amwest's cause of action accrued after August 31, 2008, as Amwest contends, then Amwest's cause of action under the Indemnity Agreement is not time-barred.

As stated by the Texas Supreme Court, "[t]o determine the correct accrual date of an indemnity claim we look to the contract's indemnity provision." *Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 207 (Tex. 1999) (citing Tex. Civ. Prac. & Rem. Code § 16.0004(a)(3)). An indemnification agreement can be one "either to indemnify against liability or to indemnify against damages." *Tubb v. Bartlett*, 862 S.W.2d 740, 750 (Tex. App.— El Paso 1993, writ denied); *Russell v. Lemons*, 205 S.W.2d 629, 631 (Tex. Civ. App.—Amarillo 1947, writ ref'd n.r.e). As stated by the Fifth Circuit:

> The very terms suggest an earlier date of accrual for liability indemnity agreements. Liability indemnity agreements may be called "broader," often holding the indemnitee "harmless" against "all claims" and "liabilities." Under a liability indemnity agreement, the indemnitee's right to sue does not accrue, however, until liability becomes fixed and certain, as by rendition of a judgment, *whether or not the indemnitee has yet suffered actual damages, as by payment of a judgment*. Damages indemnity agreements, on the other hand, are not as broad, and the indemnitee's right to sue does not accrue until the indemnitee has suffered damage or injury *by being compelled to pay the judgment or debt*.

*Smith Int'l*, 490 F.3d at 389 (emphasis added)(internal punctuation and citations omitted).

Texas courts construe indemnity agreements under the normal rules of contract construction. *Associated Indemnity Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 284 (Tex.1998). As neither party has asserted any question of ambiguity, "the answer to the question should be found by determining the intention of the parties as evidenced by the language used by them in the indemnity

agreement. Of course, it is a cardinal rule governing the construction of indemnity agreements that the indemnitor is entitled to have his undertaking strictly construed, and that it cannot be extended by construction or implication beyond its plain meaning." *Hudson v. Hinton*, 435 S.W.2d 211, 214 (Tex. Civ. App. —Dallas 1968, no writ).

The Court turns now to an examination of the words of the Indemnity Agreement in an effort to determine the intent of the parties, using ordinary rules of contract construction. The Indemnity Agreement that is the centerpiece of Amwest's cause of action for breach of contract provides, in relevant part:

> In consideration of the execution and delivery by the Surety of a Bond or any Bonds on behalf of the Principal, the Undersigned agree to indemnify and hold the Surety harmless from and against any and all demands, liabilities, losses, costs, damages, attorneys' fees and expenses of whatever kind or nature which arise by reason of, or in consequence of, the execution by the Surety of any Bond on behalf of the Principal and whether or not the Surety shall have paid any sums in partial or complete payment thereof[.]
>
> A. The liability of the undersigned shall extend to and include all amounts paid by the Surety in good faith under the belief that 1) principal was in default [. . . ]; 2) Surety was or might be liable therefore; 3) such payments were necessary or advisable to protect any of Surety's rights as to avoid or lessen Surety's liability or alleged liability.

Amwest Summ. Judg. App. at 30 (Fitzgibbons Aff. ¶¶ 11-12); *id.* at 41 (Indemnity Agreement ¶ 2). The Indemnity Agreement was signed by Jose Cardenas, individually and as sole proprietor of OSCC, along with his spouse, Gloria Cardenas, individually. *Id.* at 43-44. Giving the words of the Indemnity Agreement their ordinary meaning, and following the maxim of law that, "as a man binds himself, so shall he be bound[“], *Russell*, 205 S.W.2d at 631, it is apparent that the obligation was intended to protect the indemnitee (Amwest) against any liability, and to hold Amwest harmless and protect Amwest from the consequences of liability. While the plain language also includes the terms

"losses," "costs," and "damages," the Indemnification Agreement unambiguously evidences the parties' intent to exclude actual payment of the loss as a prerequisite to the indemnitor's obligations to the indemnitee. Amwest Summ. Judg. App. at 30 (Fitzgibbons Aff. ¶¶ 11-12); *id.* at 41 (Indemnity Agreement ¶ 2) (obligation of indemnitee to indemnify and hold harmless the surety arises "*whether or not* the Surety shall have paid any sums in partial or complete payment thereof[.]) In *Ingersoll-Rand*, the indemnity agreement, similar to the Indemnity Agreement in this case, provided:

> OWNER [Valero] shall *release, defend, indemnify and hold harmless* [CONTRACTOR] [Kellogg], its subcontractors [Ingersoll-Rand] and affiliates and their employees performing services under this Agreement against *all claims, liabilities, loss or expense*, including legal fees and court costs in connection therewith, arising out of or in connection with this Agreement or the Work to be performed hereunder, *including losses attributable to the CONTRACTOR'S negligence*[.]

*Ingersoll-Rand*, 997 S.W.2d at 207 (emphasis added). The Fifth Circuit determined that this type of "broad language" evidenced a liability indemnity agreement. *Id.* "Such provisions entitle the indemnitee to recover when the liability becomes fixed and certain, as by rendition of a judgment, whether or not the indemnitee has yet suffered actual damages, as by payment of a judgment." *Id.* In this case, it is undisputed that Amwest's liability became "fixed and certain" on April 9, 2007, the date the Liquidation Court approved FWTA's claim. Amwest Summ. Judg. App. at 31-32 (Fitzgibbons Aff. ¶¶ 17); *id.* at 56 (Liquidation Court's April 9, 2007 Order Approving FWTA Claim).

Amwest's reliance on *Tubb* is misplaced. In *Tubb*, the court noted that a right to bring suit with respect to a promise to indemnify against damages "does not accrue until the indemnitee has suffered damage or injury *by being compelled to pay the judgment or debt*." *Tubb*, 862 S.W.2d at 750 (emphasis added). By contrast, in this case, the surety's right to bring suit for indemnification

accrued irrespective of any actual payment by the surety, i.e., "*whether or not* the Surety shall have paid any sums in partial or complete payment thereof[.]" Amwest Summ. Judg. App. at 30 (Fitzgibbons Aff. ¶¶ 11-12); *id.* at 41 (Indemnity Agreement ¶ 2) (emphasis added).

To review, on April 5, 2007, Amwest's Liquidator recommended approval of FWTA's claim in the amount of $329,824.07, and on April 9, 2007, the Liquidation Court issued an order approving the Liquidator's recommendation of FWTA's Proof of Claim. *Id.* at 31-32 (Fitzgibbons Aff. ¶ 17); *id.* at 56-64 (Liquidator's Application and Liquidation Court's April 9, 2007 Order Approving FWTA's Claim). According to Amwest's own affiant, Fitzgibbons, "[t]he Liquidation Court's Order was not appealed and constitutes a final order of the Liquidation Court." *Id.* at 32 (Fitzgibbons Aff. ¶ 17); *id.* at 56 (Liquidation Court's April 9, 2007 Order Approving FWTA's Claim). *See generally Bard v. Charles R. Myers Ins.Agency*, 839 S.W.2d 791, 799 (Tex. 1992) (final liquidation order of Vermont receivership court was entitled to full faith and credit in Texas court).

Under the plain language of the Indemnity Agreement, the accrual date for Amwest's indemnity claim in this case is April 9, 2007, the date on which the FWTA's claim in the amount of $329,824.07 became fixed and certain by final judgment. Amwest did not file this lawsuit until August 31, 2012, more than four years after the accrual date for its indemnity claim. Therefore the indemnity claim is time-barred. Accordingly, the Court denies Amwest's summary judgment on its breach of contract claims; and grants Defendants' motion for summary judgment on the same claim, even though Defendants erroneously argue that the four-year statute of limitations on Amwest's indemnity claim that is the subject of this lawsuit accrued on December 15, 1998, when FWTA terminated the Construction Contract alleging default by OSCC and Jose Cardenas. *See General*

*Universal Systems, Inc. v. Lee*, 379 F.3d 131, 145 (5th Cir. 2004)( summary judgment proper when party has opportunity to develop and present its case).

*2. The Good Faith Condition Precedent to Amwest's Right to Indemnification*

Alternatively, the Court determines based on the undisputed material facts that Amwest has failed to meet its burden of showing it met the good faith condition precedent to its right of indemnity. *See Associated Indemnity*, 964 S.W.2d at 283 ("A party seeking to recover under a contract bears the burden of proving that all conditions precedent have been satisfied"). The Indemnity Agreement provides that good faith by the surety is a condition precedent to the surety's right to recover from the Contractor, to wit:

> The liability of the undersigned shall extend to and include all amounts paid by the Surety in *good faith* under the belief that 1) principal was in default [. . . ]; 2) Surety was or might be liable therefore; 3) such payments were necessary or advisable to protect any of Surety's rights as to avoid or lessen Surety's liability or alleged liability.

Amwest Summ. Judg. App. at 30 (Fitzgibbons Aff. ¶¶ 11-12); *id.* at 41 (Indemnity Agreement ¶ 2A) (emphasis added). The Texas Supreme Court has defined "good faith" in the indemnity context to include conduct which is free from "wilful ignorance of the facts." *Associated Indemnity*, 964 S.W.2d at 285.

The undisputed evidence establishes that Amwest recommended FWTA's claim for payment in the liquidation proceedings, and ultimately made payments to FWTA after the April 9, 2007 allowance of the claim, even though: (1) Amwest knew that FWTA's failure to file the state court case within one year of the Construction Contract's termination was a bar to the state court case under Tex. Gov't Code § 2253.078(a); and (2) Amwest knew that FWTA's claim against OSCC and

Jose Cardenas for breach of the Construction Contract was barred by the four-year statute of limitations under Tex. Civ. Prac. & Rem. Code § 16.051. The Court addresses these defenses in turn.

*a. Tex. Gov't Code § 2253.078(a) - One-Year Time Bar to Suit on Bond*

The undisputed summary judgment evidence shows that, although specifically incorporated into the Bond, Amwest failed to raise the one-year time bar for suits on a bond under Tex. Gov't Code § 2253.078(a) as a defense to FWTA's claim in the liquidation proceeding. *See* Amwest Summ. Judg. App. at 30 (Fitzgibbons Aff. ¶¶ 11-12); *id.* at 47 (Texas Statutory Performance Bond – Public Works – No. 1363139); *id.* at 48 (Texas Statutory Payment Bond – Public Works – No. 1363139).[4] The undisputed facts show that on December 15, 1998, FWTA gave written notice to OSCC and Jose Cardenas that the Construction Contract was terminated for default. Cardenas Summ. Judg. App. at Ex. 3 (Pl. Resp. to Def. Req. for Admiss. at 4, *Response No. 11*).[5] Pursuant to Tex. Gov't Code § 2253.078(a): "A suit on a performance bond may not be brought after the first

[4]The Performance Bond provides that "this bond is executed pursuant to the provisions of Chapter 2253 of the Texas Government Code and all liabilities on this bond shall be determined in accordance with the provisions, conditions and limitations of said Chapter to the same extent as if it were copied at length herein." Amwest Summ. Judg. App. at 30 (Fitzgibbons Aff. ¶¶ 11-12); *id.* at 47 (Texas Statutory Performance Bond – Public Works – No. 1363139).

[5]The Court rejects Amwest's argument that "FWTA's letter of December 15, 1998 did not terminate the contract as a whole, but only the contractor's (OSCC) right to proceed thereunder [. . .] The contract itself remained in full force and effect." Pl. Reply Brief in Supp. of Summ. Judg. Mot. at 3 [ECF No. 51]. Amwest's legal argument contradicts its admission in response to Defendants' discovery request, that the December 15, 1998 FWTA letter terminated the contract:

> **REQUEST FOR ADMISSION NO. 11**: On December 15, 1998, the Fort Worth Transportation Authority gave written notice to OSCC and Jose Cardenas that contract I.F.B. #98-T019 was terminated for default under said contract.
> **RESPONSE**: Admit.

Cardenas Summ. Judg. App. at Ex. 3 (Pl. Resp. to Def. Req. for Admiss. at 4, *Response No. 11*).

anniversary of the date of final completion, abandonment, or termination of the public work contract." Tex. Gov't Code § 2253.078(a). FWTA brought the state court case on December 29, 1999, after the one-year anniversary. As the Contractor could not have been found liable on a time-barred suit, Amwest as surety could not be liable to FWTA on the Bond. *See generally Wright Way Constr. v. Harlingen Mall Co.*, 799 S.W.2d 415, 426 (Tex. App.— Corpus Christi 1990, writ denied) (and cases cited therein) ("The liability of a surety is derivative in nature. Such liability depends on the principal's liability.").

Given Amwest's failure to raise the one-year bar to suit on a bond under Tex. Gov't Code § 2253.078(a) in the liquidation proceedings, the Court concludes that Amwest has failed to meet its burden of establishing that it acted in good faith in connection with bringing this indemnification action against Defendants. *See generally Associated Indemnity*, 964 S.W.2d at 285 (defining "good faith" in the indemnity context to include conduct which is free from "wilful ignorance of the facts.").

*b. Tex. Civ. Prac. & Rem. Code § 16.051 Four-Year Bar to Suit on Construction Contract in State Court Case*

The undisputed summary judgment evidence also shows that Amwest was aware of, yet failed to raise, the four-year statute of limitations under Tex. Civ. Prac. & Rem. Code § 16.051 as a defense to FWTA's claim in the liquidation proceeding. To reiterate, the Indemnity Agreement provides that good faith by the surety is a condition precedent to the surety's right to recover from the Contractor, to wit:

> The liability of the undersigned shall extend to and include all amounts paid by the Surety in *good faith under the belief that 1) principal was in default* [. . . ]; 2) *Surety was or might be liable therefore*; 3) such payments were

> necessary or advisable to protect any of Surety's rights as to avoid or lessen Surety's liability or alleged liability.

Amwest Summ. Judg. App. at 30 (Fitzgibbons Aff. ¶¶ 11-12); *id.* at 41 (Indemnity Agreement ¶ 2A) (emphasis added). Under Tex. Civ. Prac. & Rem. Code § 16.051, a party asserting a breach of contract claim must sue no later than four years after the day the claim accrues. "It is well-settled law that a breach of contract claim accrues when the contract is breached (citation omitted)." *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002). *See Wright Way Constr*, 799 S.W.2d at 426 (liability of surety derivative).

On December 15, 1998, FWTA sent a letter to OSCC alleging that it was terminating the Construction Contract because of Contractor's default under the terms of the contract. Cardenas Summ. Judg. App. at Ex. 3 (Pl. Resp. to Def. Req. for Admiss. at 4, *Response Number 11*). Thus, the four-year statute of limitations began to run on December 15, 1998. Claims asserted by FWTA after December 14, 2002 were therefore time-barred. Although FWTA's breach of contract claim in the state court case was tolled during the period of abatement, when the case was dismissed for want of prosecution on July 9, 2004, and not reinstated, FWTA's cause of action on its claims against Contractor became time-barred. *See generally Willard v. Wood*, 164 U.S. 502, 523 (1896) (and cases cited therein) ("The general rule of limitations must be borne in mind . . . [W]here, from any cause, a plaintiff becomes nonsuit, or the action abates or is dismissed, and, during the pendency of the action, the limitations runs, the remedy is barred."). As the liability of the surety is derivative of the principal's liability, *Wright Way Constr.*, 799 S.W.2d at 426 (and cases cited therein), Amwest had a statute of limitations defense to FWTA's claim on the Bond in the liquidation proceeding that it failed to raise.

Amwest's awareness of the statute of limitation defense is undisputed based on its own claim file. Amwest Summ Judg. App. at 176 (Claim File) (letter summarizing Amwest Liquidator's initial assessment that FWTA's claim in liquidation against Amwest should be denied due to the dismissal of the state court case on July 9, 2004, which constituted a release of the surety, as the four-year statute of limitations on the Construction Contract had now expired); *id.* at 224-226 (June 20, 2006 Letter from Amwest's counsel Jane F. Lanagan, Esq. to Amwest's referee Theoodore L. Kessner) (and cases cited therein)(advising that FWTA's claim in the liquidation proceeding should be denied because the liability of the principal (Jose Cardenas d/b/a OSCC) was extinguished in the state court case, as obligee (FWTA) allowed the statute of limitations to expire, and the liability of the surety (Amwest) can be no greater than that of the principal).

In the face of this undisputed evidence, Amwest states in its brief: "The statute of limitation on the underlying contract may be relevant to this case, but only as it relates to the Liquidator's adjudication of FWTA's claim. During the claim investigation process, the Liquidator evaluated whether the statute of limitations on the underlying claim was a basis to deny FWTA's claim, and ultimately concluded he was judicially estopped from taking such a position . . . because the Liquidator required FWTA to abate the state court proceeding and instead file a claim in Amwest's liquidation proceeding." Amwest Reply in Supp. of Amwest Summ. Judg. Mot. at 3 [ECF No. 51]. While the Liquidator's estoppel theory may have been correct as to Amwest under the terms of the June 7, 2001 Liquidation Order (Amwest Summ. Judg. App. at 34-40), it does not extend to FWTA's claims against Jose Cardenas and OSCC, who were co-defendants of Amwest in the state court case. Further, that Amwest's Liquidator acted in compliance with Nebraska liquidation laws (*see* Fitzgibbons Aff. and Report of Richard S. Wisener) does not show that the surety met the condition

precedent of good faith required by the Indemnity Agreement. Failure by the surety to assert what it knew to be defenses to FWTA's claim in the liquidation proceeding, on the face of the undisputed record before the Court, shows conduct that is, as a matter of law, "wilful ignorance of the facts." *Associated Indemnity*, 964 S.W.2d at 285. Amwest has failed to marshal any evidence to produce a fact issue for the jury to the contrary. Legal argument alone does not suffice.

In sum, the Court denies Amwest's motion for summary judgment on its first claim for relief for breach of the indemnity agreement. Amwest filed this lawsuit on August 31, 2012; the statute of limitations on its indemnity claim expired on April 9, 2011, four years after its liability became fixed and certain. Alternatively, Amwest has failed to raise a genuine issue of material fact that it has met its burden of demonstrating that it acted in good faith in recommending the FWTA claim be allowed in the liquidation proceedings, and in making payments to FWTA following the April 9, 2007 claim allowance, a condition precedent to its recovery under the Indemnity Agreement.

**B. Amwest's Second Claim for Relief (Common Law Reimbursement)**

Amwest's second claim for relief, pleaded in the alternative, is for common law reimbursement. Compl. ¶¶ 16-24 [ECF No. 1]. Having considered the undisputed evidence, briefing, and applicable law, the Court determines that Defendants are entitled to judgment as a matter of law on Amwest's claim for common law reimbursement.

As stated by the Texas Supreme Court:

> Courts have long recognized that a surety has an equitable right to reimbursement from the principal for amounts paid on an indemnity bond. To recover against the principal under this equitable remedy, however, many jurisdictions required the *surety to prove that the principal was in fact liable on the claim*. With only this remedy available, many sureties were reluctant to settle claims prior to a determination of a principal's liability. This dilemma led to the widespread use of [indemnification agreements], under which the surety may obtain reimbursement for

> settlement amounts paid in good faith, regardless of whether the principal is ultimately determined to be liable to the obligee. The indemnity agreement thus encourages settlement of claims, avoiding expensive, time-consuming litigation, generally without unfairness.

*Associated Indemnity*, 964 S.W.2d at 281 n.2 (emphasis added); *see also Gulf Liquids New River Project, LLC v. Gulsby Engineering, Inc.*, 356 S.W.3d 54, 81-82 (Tex. App.—Houston [1st Dist.] 2011, reh'g overruled) (surety's equitable right to reimbursement not available where principal not, in fact, liable); 22 Tort & Ins. L. J. at 141-43 ("The common denominator on each of the equitable remedies is that there be a valid enforceable obligation owing both by the principal; and surety to the obligee. Hence, the general rule is that if there is no valid and enforceable obligation, the surety acts only as a 'volunteer' and is precluded from having equitable relief from the principal.").

As already stated above, Defendants have submitted undisputed evidence that the statute of limitations under Tex. Gov't Code § 2253.078(a) is a bar to liability on the Construction Contract. *See supra* at 12-13. In addition, as set forth above, Defendants have presented undisputed summary judgment evidence that FWTA's breach of contract claim in the state court case against OSCC and Jose Cardenas is time-barred under Tex. Civ. Prac. & Rem. Code § 16.051. *See supra* at 13-15. As such, Amwest is unable to raise a genuine issue of material fact to show that OSCC and Jose Cardenas were, in fact, liable on the claim brought by the obligee (FWTA) in the state court case, a requirement for a surety's recovery against a principal for common law reimbursement. *See generally Associated Indemnity*, 964 S.W.2d at 281 n.2; *Gulf Liquids New River Project*, 356 S.W.3d at 81-82. Accordingly, the Court grants summary judgment in favor of Defendants as to Amwest's second claim for relief, common law reimbursement, and enters judgment as a matter of law in favor of Defendants.

**IV. Conclusion**

Based on the foregoing, the Court:

(1) **denies** Plaintiff Amwest Surety Insurance Company in Liquidation's Motion for Summary Judgment [ECF No. 31];

(2) **grants** Defendants' Motion for Summary Judgment [ECF No. 37], and enters judgment as a matter of law in Defendants' favor; and

(3) **denies** Defendants Jose Cardenas and Gloria Cardenas' Motion to Strike Portions of Affidavit of Michael Fitzgibbons [ECF No. 46].

Accordingly, Plaintiff Amwest's First Claim for Relief ("Breach of Contract") is hereby **dismissed with prejudice** as time-barred by the four-year statute of limitations applicable to the General Indemnity Agreement. Plaintiff Amwest's Second Claim for Relief (Common Law Reimbursement), pleaded in the alternative, is hereby **dismissed with prejudice** as Amwest has failed to raise a genuine issue of material fact that OSCC and Cardenas were, in fact, liable to FWTA on the Construction Contract. As no claims remain, this case is hereby **dismissed with prejudice,** and all remaining pretrial motions in the case [ECF Nos. 47, 48, 68, 69, 70, and 84] are hereby **denied as moot**.

**SO ORDERED** on this **22nd day** of **October, 2013**.

**Reed O'Connor**
**UNITED STATES DISTRICT JUDGE**